UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| THE MORSE GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| ALOFT MEDIA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATORY JUDGMENT COMPLAINT

Plaintiff, THE MORSE GROUP, INC. (hereinafter "Morse" or "Plaintiff"), files this Declaratory Judgment Complaint against Defendant, ALOFT MEDIA, LLC (hereinafter "Aloft Media" or "Defendant"). and alleges as follows:

## NATURE OF THE ACTION

1.      This case involves an effort by Defendant to pressure Morse into paying for a license for alleged patent infringement of U.S. Patent No. 10,372,793 (the "Asserted Patent"). A true and correct copy of the Asserted Patent is attached as **Exhibit 1**.

2.      Beginning on February 18, 2025, and through repeated communications thereafter, Defendant has asserted that Morse's website, https://www.themorsegroup.com/, infringes the Asserted Patent and has demanded that Morse must take a license to the Asserted Patent. As explained in greater detail below, Morse does not infringe any valid or enforceable claim of the Asserted Patent.

3.      Additionally, as explained in greater detail below, the Asserted Patent is invalid for failure to satisfy one or more of the conditions for patentability set forth in 35 U.S.C. § 101 *et. seq.,* including particularly, 35 U.S.C. §§ 101, 102, 103, 112, 120, and/or 132.

4. Additionally, as explained in greater detail below, the Asserted Patent is unenforceable pursuant to the doctrines of inequitable conduct and prosecution laches, resulting from conduct during prosecution.

5. Accordingly, Morse brings this action seeking: (i) a declaration under the Declaratory Judgments Act (28 U.S.C. § 2201) that the Asserted Patent is invalid and/or unenforceable; and (ii) a declaration under the Declaratory Judgments Act (28 U.S.C. § 2201) that Morse has not and does not infringe any valid and enforceable claim of the Asserted Patent.

## THE PARTIES

6. Plaintiff, The Morse Group, Inc., is an Illinois corporation with its principal place of business at 500 West South Street, Freeport, Illinois 61032.

7. Defendant, Aloft Media, LLC, is a Texas limited liability company with an address at 211 West Tyler Street, Suite C-1, Longview, Texas 75601-6398.

## JURISDICTION AND VENUE

8. The Court has original and exclusive subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1338 (a) and (b) because this Complaint states claims arising under Acts of Congress, including the Patent Act, *i.e.*, 35 U.S.C. § 101 *et. seq.*

9. The Court also has original and exclusive subject matter jurisdiction over these claims because this Complaint arises under the Declaratory Judgments Act (28 U.S.C. §§ 2201 and 2202), in that it involves an actual case or controversy due to Defendants' accusation that Morse infringes the Asserted Patent and its repeated licensing demands made to Morse.

10. "In a declaratory judgment action alleging invalidity and non-infringement, venue is governed by the general venue statute, 28 U.S.C. § 1391, not…the special patent venue statute,

28 U.S.C. § 1400(b)." *D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 778 (D. Md. 2009) (citing *General Tire & Rubber Co. v. Watkins*, 326 F.2d 926, 929 (4th Cir.1964)).

11.     Venue is proper in the Northern District of Illinois (hereinafter "this District"), because Plaintiff, The Morse Group, Inc., is headquartered in this District and because a substantial part of the events giving rise to this action occurred in this District.

12.     Defendant has purposefully directed its patent enforcement efforts into this District. Aloft Media and George Street Partners, the licensing agent acting on Aloft Media's behalf, have sent a notice of patent infringement and follow-up licensing communications to Morse, an Illinois corporation with its principal place of business in this District.

13.     This Court has personal jurisdiction over Defendant, Aloft Media, because Aloft Media purposefully availed itself of the forum by targeting The Morse Group, Inc., an Illinois corporation, with infringement accusations and licensing demands. Additionally, through its licensing agent, George Street Partners, Aloft Media has repeatedly contacted Morse attempting to solicit licensing payment.

14.     Further, this Court has personal jurisdiction over Aloft Media because Aloft Media has continuous and systematic business contact with the State of Illinois and this judicial district, through its business relationship with George Street Partners.

15.     On information and belief, Aloft Media utilizes George Street Partners, an Illinois corporation, exclusively to manage its patent licensing activities, and George Street Partners operates as Aloft Media's de facto licensing department. Accordingly, Illinois serves as the locus of Aloft Media's patent licensing operation, and this dispute arises directly from the enforcement and licensing efforts carried out through this Illinois-based agent.

16.     Additionally, on information and belief, Aloft Media and George Street Partners have purposefully directed similar enforcement and licensing efforts at multiple entities within the State of Illinois and this judicial district.

17.     On information and belief, Aloft Media and George Street Partners have negotiated licensing agreements with several entities within the State of Illinois and this judicial district, including ACCO Brands Corporation, Sears Holdings Corporation, MillerCoors LLC, Morningstar, Inc., Motorola Solutions, Inc., TransUnion LLC, Underwriters Labs, and CDW Corporation.

18.     For these reasons, the Court's exercise of personal jurisdiction over the Defendant Aloft Media comports with due process and is proper under governing precedent.

## FACTUAL BACKGROUND

19.     The Morse Group provides comprehensive electrical contracting services, including project development, design-build solutions, construction, and automation to commercial and industrial clients throughout the United States.

20.     Morse operates www.themorsegroup.com, including each and every one of the web pages comprising the site (collectively, the "Accused Morse Website"). A print-out of the home page of the Accused Morse Website is attached as **Exhibit 2**. Morse uses the Accused Morse Website to engage with customers and potential customers, as well as to market and sell its products and services.

21.     On February 18, 2025, Aloft Media sent a letter, claim chart, and patent license agreement to Morse (collectively, the "Notice Letter"). A true and correct copy of the Notice Letter is attached hereto as **Exhibit 3**.

22. In the Notice Letter, Aloft Media: (i) claims to be the owner of the Asserted Patent, (ii) accuses Morse of infringement of the Asserted Patent, (iii) identifies Morse's website as an allegedly infringing instrumentality, (iv) outlines alleged conduct attributable to Morse and alleges that conduct to be infringing, (v) provides a claim chart asserting Aloft Media's theory of Morse's alleged infringement of the Asserted Patent, and (vi) provides a patent license agreement to be executed by Morse.

23. In the Notice Letter, Aloft Media specifically accuses the Accused Morse Website of infringing claim 23 of the Asserted Patent.

24. In the Notice Letter, Aloft Media identifies George Street Partners as its "authorized licensing agent."

25. The Notice Letter does not offer a covenant not to sue. Rather, it provides detailed allegations of infringement, accuses Morse of unlicensed use of patented technology, and demands that Morse execute a patent license agreement and make license payments to George Street Partners to resolve the matter.

26. On information and belief, Aloft contracts with George Street Partners as the exclusive licensor of Aloft Media's patent portfolio. George Street Partners is an Illinois corporation having an address at 11686 Oak Tree Way, Suite 101, Carmel, Indiana 46032. According to the Illinois Secretary of State Office, George Street Partners has a registered address at 1 Northfield Plaza, #300, Northfield, Illinois 60093.

27. On information and belief, Aloft Media retained George Street Partners to act as its licensing representative, including in discussions with Morse.

28. Since February 18, 2025, George Street Partners has sent several email communications to Morse on Aloft Media's behalf, attempting to induce Morse to sign a patent

license agreement. Additionally, George Street Partners has attempted to initiate telephone conversations regarding the same.

29.     On information and belief, Aloft Media is a non-practicing entity, colloquially referred to as a "patent troll" or "patent assertion entity." **<u>Exhibit 4</u>**

30.     On information and belief, Aloft Media does not practice the Asserted Patent. Aloft Media's business is predominantly directed to monetizing its patents, including the Asserted Patent, via licensing.

31.     Aloft Media has an established and well-documented history of filing patent infringement lawsuits following communications of the type sent to Morse.

32.     Aloft Media has filed at least (14) lawsuits alleging patent infringement in the Eastern District of Texas.

33.     On information and belief, in each of these lawsuits, Aloft Media would first send letters asserting patent infringement and then, shortly thereafter, initiate litigation in a plaintiff-favorable venue.

34.     On information and belief, Aloft Media is part of a network of affiliated entities under common control which repeatedly assert patents in coordinated campaigns to intimidate defendants.

35.     On information and belief, this network is made up of at least Aloft Media, LLC, Stragent, LLC, Azure Networks, LLC, Stragent Technologies, LLC, Jenam Tech, LLC, and Boadin Technology, LLC.

36.     On information and belief, each of these entities have and/or had overlapping ownership.

37.     On information and belief, these affiliated entities have brought various patent infringement lawsuits against at least 78 unique defendants since 2007.

### *The Asserted Patent*

38.     U.S. Patent No. 10,372,793 (the "Asserted Patent), is titled "Hyperlink with Graphical Cue" and issued from U.S. Application No. 16/243,044, which was filed on January 8, 2019.

39.     The Asserted Patent, is purportedly a continuation of U.S. Application. No. 16/056,487, filed August 6, 2018, which in turn is purportedly a continuation of U.S. Application No. 14/224,002, filed March 24, 2014, now issued under U.S. Patent No. 10,042,823, which is purportedly a continuation of U.S. Application No. 12/334,068, filed December 12, 2008, now issued under U.S. Patent No. 8,682,961, which is purportedly a continuation of U.S. Application No. 11/384,957, filed March 20, 2006, now issued under U.S. Patent No. 7,529,795.

40.     The Asserted Patent comprises thirty (30) claims, of which four (4) are independent claims and the remaining twenty-six (26) claims are dependent claims.

41.     According to the Asserted Patent, "[t]he present invention relates to computer-implemented techniques for improving the usefulness of hyperlinks in web pages." **Exhibit 1** at 1:24-26

42.     In particular, Aloft Media has asserted Claim 23 of the Asserted Patent which reads as follows:

- A method, comprising:

- Providing content for at least one web page, the at least one web page including a set of one or more representations of one or more menu items and a set of one or

more representations of one or more hyperlinks, and the at least one web page configured to:

- Cause display of the set of one or more representations of one or more menu items of the at least one web page, without any images being used in the display of the set of one or more representations of one or more menu items , and with the set of one or more representations of one or more hyperlinks being initially hidden and taking the form of hypertext including one or more textual representations of one or more hyperlinks,

- Allow receipt of a first input, in the form of hovering, that indicates a selection of one of the set of one or more representations of one or more menu items,

- Cause, in response to receipt of the first input indicating the selection of the one of the set of one or more representations of one or more menu items, display of the set of one or more representations of one or more hyperlinks,

- Allow receipt of a second input that indicates a selection of one of the set of one or more representations of one or more hyperlinks, and

- Cause, in response to receipt of the second input indicating the selection of the one of the set of one or more representations of one or more hyperlinks, display of a destination corresponding to the one of the set of one or more representations of one or more hyperlinks, the destination including at least a portion of additional content displayed simultaneously with the set of one or more representations of one or more menu items, so as to allow use of the set of one or more representations of one or more menu items while the at least portion of additional

content is simultaneously displayed with the set of one or more representations of one or more menu items.

### *The Accused Morse Website*

43.     Morse operates the Accused Morse Website which is used to promote and sell Morse's products and services as described above.

44.     The Accused Morse Website comprises a collection of individual server-rendered pages that each re-display the site's main menu as part of a shared layout template.

45.     In order to facilitate navigation, the Accused Morse Website uses a nested menu, wherein a user can first select one of the top-level menu options in the ribbon (e.g. "About Us") and then, within that category, make a further selection (e.g. "Safety"), causing navigation to the requested web page (e.g. https://www.themorsegroup.com/about-us/safety/). **Exhibit 2**

46.     In response to a user selection, the user is directed to an entirely new webpage and the original menu is not persistently displayed but instead reloaded as part of the new page's HTML.

47.     The public source code confirms that the website's navigation menu and header are included in the server-rendered HTML for each page and are reloaded in full with every page navigation. There is no use of persistent client-side rendering, SPA routing, or AJAX-based dynamic content loading. **Exhibit 5**

48.     Throughout the entirety of the user experience on the Accused Morse Website, the user is only ever routed amongst various internal web pages that comprise the Accused Morse Website. All subsequent web pages the user is enabled to reach from the home page of the Accused Morse Website through the nested menu are internal web pages which are part of the Accused Morse Website.

## COUNT I
## DECLARATION OF NON-INFRINGEMENT OF U.S. PATENT NO. 10,372,793
*(28 U.S.C. § 2201)*

49.     Morse restates and incorporates by reference the allegations in the preceding

paragraphs as if fully set forth herein.

50.     Pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201 *et. seq.* Morse

requests a declaration by the Court that Morse has not infringed and does not infringe any valid

and enforceable claim of the Asserted Patent, whether literally or under the doctrine of

equivalents. It is also axiomatic that an invalid patent cannot be infringed.

51.     Additionally, Morse is not liable for any induced, contributory, divided, or any

other indirect infringement of any valid and enforceable claim of the Asserted Patent.

52.     The Accused Morse Website does not infringe Claim 23 of the Asserted Patent

either literally or under the doctrine of equivalents because it does not include at least the

following claim limitations: "Cause, in response to receipt of the second input indicating the

selection of the one of the set of one or more representations of one or more hyperlinks, **display**

**of a destination** corresponding to the one of the set of one or more representations of one or

more hyperlinks, the **destination including at least a portion of additional content displayed**

**simultaneously with the set of one or more representations of one or more menu items**, so as

to allow use of the set of one or more representations of one or more menu items while the at

least portion of additional content is simultaneously displayed with the set of one or more

representations of one or more menu items." (emphasis added)

53.     The Accused Morse Website does not infringe Claim 23 of the Asserted Patent

because it does not cause display of a "destination" as that claim term is defined by the

specification of the Asserted Patent. The specification describes "destination" as an external

website. The specification of the Asserted Patent does not provide any disclosure or support for a "destination" being an internal web page of the described website. The Accused Morse Website only causes users to be directed to internal web pages of the Accused Morse Website through its nested drop-down menus.

54.     The Accused Morse Website does not infringe Claim 23 of the Asserted Patent because it does not cause at least a portion of additional content to be displayed simultaneously with the set of one or more representations of one or more menu items. As informed by the specification of the Asserted Patent, this claim limitation requires new content to be displayed without navigating away from the first web page, such as display of destination content in a frame of the web page. Interaction with the nested drop-down menus of the Accused Morse Website causes a user to be navigated away from one web page to a new web page within the website. With each navigation, the menu items are reloaded as part of the new web page's HTML. The Accused Morse Website does not use any form of persistent client-side rendering, SPA routing, or AJAX-based dynamic content loading.

55.     Additionally, upon information and belief, because of the proceedings in the USPTO during the prosecution of the applications which resulted in the Asserted Patent, as shown by the respective prosecution histories thereof, Aloft Media is estopped to claim a construction of any term of the Asserted Patent that would cause any valid claim thereof to cover or include the Accused Morse Website, either literally or under the doctrine of equivalents.

56.     In light of Defendant's Notice Letter and the Parties' licensing communications, there exists a substantial, real, and immediate controversy between Morse and the Defendant concerning Morse's alleged infringement of the Asserted Patent.

57. Defendant's conduct toward Morse, combined with Defendant's aggressive widespread licensing campaign and the history of Defendant and its affiliates filing patent infringement lawsuits, clearly demonstrates Defendant's intent to litigate the issue.

58. This controversy warrants the issuance of a declaratory judgment of non-infringement. A judicial declaration is necessary and appropriate so that Morse may ascertain its rights and obligations regarding the Asserted Patent.

59. Morse therefore respectfully seeks a judicial declaration that it does not directly, indirectly, or otherwise infringe any valid and enforceable claim of the Asserted Patent.

## COUNT II – DECLARATION OF INVALIDITY OF U.S. PATENT NO. 10,372,793
### (28 U.S.C. § 2201; 35 U.S.C. §§ 101, 102, 103, 112, 132)

60. Morse restates and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

61. Pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201 *et. seq.* Morse requests a declaration by the Court that the Asserted Patent is invalid for failure to satisfy one or more of the conditions for patentability set forth in 35 U.S.C. § 101 *et seq.*, including particularly, 35 U.S.C. §§ 101, 102, 103, 112 and/or 132.

62. The claims of the Asserted Patent are invalid under 35 U.S.C. § 101 because they are directed to an abstract idea and fail to recite an inventive concept sufficient to transform the claimed abstract idea into patent-eligible subject matter.

63. The claims of the Asserted Patent are invalid because they are anticipated pursuant to 35 U.S.C. § 102 or rendered obvious pursuant to 35 U.S.C. § 103 by prior art patents, printed publications, and/or public use or on-sale activities, alone or in combination, when considered in view of the knowledge of a person of ordinary skill in the art, including but not

12

limited to Votipka, U.S. Patent No. 6,405,238 (**Exhibit 6**) and Benson, U.S. Patent No.

7,913,185. **Exhibit 7**

64.     On information and belief, the claimed invention of the Asserted Patent was "in

public use or on sale in this country, more than one year prior to the date of the application." by

virtue of www.instantbull.com (hereinafter the "Instantbull Website"). Accordingly, the Asserted

Patent is invalid under the 'on sale bar' as prescribed in 35 U.S.C. § 102(b).

65.     In July 2006, Instantbull, LLC launched a website which featured, among other

elements, top-level menu items with hidden drop-down submenus containing hyperlinks. When a

user clicked on one of these hyperlinks, content from the linked destination website would be

displayed within an embedded frame on the Instantbull home page, allowing the user to browse

content on external websites without navigating away from the Instantbull interface. This

functionality is directly pertinent to "Hyperlink with Graphical Cue." A print-out of the home

page of the Instantbull Website from July 22, 2006 is attached as **Exhibit 8**. As shown, the user

hovers over the menu item "Markets" to reveal the sub-menu and selects the "Forbes" hyperlink,

causing content from the linked destination, www.forbes.com/equities, to be displayed within the

embedded iframe. For further understanding of the functionality of the Instantbull Website, the

source code for the home page, archived July 22, 2006, is attached as **Exhibit 9**.

66.     On March 20, 2006, Instantbull, LLC filed three applications with the Patent

Office, including U.S. Application No. 11/384,957 (hereinafter the "'957 Application") and

Provisional Patent Application 60/784,140 (hereinafter the "'140 Provisional Application").

67.     The '957 Application was titled "Message Board Aggregator" and it did not

include any disclosure supporting a Hyperlink with Graphical Cue. A true and complete copy of

the '957 Application abstract, specification, drawings, and claims as filed is included as **Exhibit 10**.

68.     The '957 Application contains a section titled "Cross Reference to Related Applications" which reads: This application is related to a commonly-owned and concurrently-filed U.S. Provisional Patent Application entitled, "Instantaneous Symbol Lookup." and a commonly-owned and concurrently-filed U.S. Provisional Patent Application entitled "Hyperlink with Graphical Cue", both of which are hereby incorporated by reference.

69.     An applicant is not entitled to the benefit of a provisional application unless the applicant has complied with the requirements of 35 U.S.C. § 119(e) and 37 C.F.R. § 1.78. Mere reference to the provisional application in the specification is not sufficient claim for benefit under 35 U.S.C. 119(e). Under 37 C.F.R. § 1.78, a nonprovisional application that claims the benefit of one or more prior-filed provisional applications must contain, or be amended to contain, a reference to each such prior-filed provisional application, identifying it by the provisional application number (consisting of series code and serial number). This reference must be submitted during the pendency of the later filed application. Failure to timely submit the reference is considered a waiver of any benefit under 35 U.S.C. § 119 to such prior-filed provisional application.

70.     The '957 Application was never amended to include the serial number or application number of any other patent application, including the '140 Provisional Application. The '957 Application issued as U.S. Patent No. 7,529,795 without including a serial number or application number for the '140 Provisional Application. A true and complete copy of U.S. Patent No. 7,529,795 is attached as **Exhibit 11**.

71.     The '957 Application does not expressly claim priority to the '140 Application as required under 35 U.S.C. § 119(e) and 37 C.F.R. § 1.78.

72.     Additionally, the '140 Provisional Application could not be properly incorporated by reference into the '957 Application because the '140 Provisional Application is not a U.S. patent or U.S. patent application publication and, therefore, under 37 C.F.R. § 1.57(d), cannot be used to satisfy the disclosure requirements of a later-filed patent application via incorporation.

73.     For these reasons, the '957 Application, and any subsequent continuation applications, cannot rely on the contents of the '140 Provisional Application for any claimed subject matter without such subject matter being considered new matter with a new filing date.

74.     U.S. Application No. 12/334,068 (hereinafter the "'068 Application"), titled "Hyperlink with Graphical Cue," was filed on December 12, 2008 as a continuation to the '957 Application. Copies of the documents initially filed for the '068 Application are attached as **Exhibit 12**.

75.     With the exception of the "Related Applications" paragraph of the written description, the entirety of the as-filed disclosure of the '068 Application inclusive of the written description, abstract, claims, and drawings is identical in every respect to the '140 Provisional Application. A true and correct copy of the '140 Provisional Application is attached as **Exhibit 13**.

76.     None of the paragraphs of the written specification or the drawings of the '068 Application as filed are present in the '957 Application. Thus, all matter filed in the '068 Application is new matter with a new filing date of December 12, 2008.

77.     The '140 Provisional Application expired on March 20, 2007, which was 12 months after it was filed.

78.    The subject matter of the '068 Application was preempted by the Instantbull Website, rendering the '068 Application and all child applications claiming priority to the '068 Application, including the Asserted Patent, invalid under the 'on sale bar' as prescribed in 35 U.S.C. § 102(b).

79.    Prior art and evidence of public use and sale to be relied on at trial will be identified as required by 35 U.S.C. § 282 and/or any order entered by the Court.

80.    The claims of the Asserted Patent are invalid pursuant to 35 U.S.C. 112 and/or 35 U.S.C. 132 for failure to comply with the written description requirement and/or for indefiniteness, including as it relates to the prohibition against adding 'new matter' to a continuation.

81.    The aforementioned controversy warrants the issuance of a declaratory judgment of invalidity. A judicial declaration is necessary and appropriate so that Morse may ascertain its rights and obligations regarding the Asserted Patent.

82.    Morse respectfully seeks a judicial declaration that the Asserted Patent is invalid under one or more of 35 U.S.C. §§ 101, 102, 103, 112, and/or 132.

## COUNT III – DECLARATION OF UNENFORCEABILITY OF U.S. PATENT NO. 10,372,793 DUE TO INEQUITABLE CONDUCT

83.    Morse restates and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

### *Duty to Disclose Information Material to the Examination*

84.    Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability. This duty extends from the time the application was filed until the issuance of the patent.

16

85. On December 12, 2008, Attorney Zilka filed several patent applications on behalf of Stragent Technologies, LLC as continuations of the first filed '957 Application. For the purposes of this section of the complaint, the relevant continuations filed on this date were U.S. Application No. 12/334,068 (hereinafter the "'068 Application") (**Exhibit 12**) and U.S. Application No. 12/334,093 (hereinafter the "'093 Application"). **Exhibit 19**

86. The abstract, specifications, and drawings of the '068 Application and the '093 Application were identical at the time of filing. Both were copies of the '140 Provisional Application. The subject matter of the claims submitted in each application were substantially similar.

87. The '068 Application and the '093 Application were assigned by Stragent Technologies, LLC to Stragent, LLC on December 31, 2008. **Exhibit 14** On February 9, 2009, Attorney Zilka, acting as president of Stragent, LLC, transferred power of attorney for these matters from himself to Attorney Christopher M. Edgeworth. The '068 Application and the '093 Application were then assigned from Stragent, LLC to Aloft Media, LLC on April 21, 2009. **Exhibit 15** Aloft Media has the same address as Stragent, LLC.

88. On January 29, 2010, Attorney Edgeworth, then president of Aloft Media, LLC, transferred power of attorney in these matters to Attorney Patrick E. Caldwell. **Exhibit 16**

89. Thereafter, the '068 Application and the '093 Application were assigned from Aloft Media to Boadin Technology, LLC on November 12, 2011. **Exhibit 17** On information and belief, Andrew Gordon was the managing member of Boadin Technology, LLC at the time of the assignment. **Exhibit 18**

90. Andrew Gordon is the current managing member of Defendant Aloft Media.

91.     On September 17, 2012, a Final Rejection was issued to Attorney Caldwell, as well as to Andrew Gordon at Andrew.gordon@stragent.com. This Office Action rejected the claim under 35 U.S.C. 103 as being unpatentable over Benson, U.S. 7,913,185 in view of Kavner, U.S. 6,366,947. **Exhibit 20**

92.     On January 17, 2013, Attorney Caldwell filed a responsive communication on behalf of Applicant Boadin Technology specifically acknowledging these two references in writing, indicating Attorney Caldwell and Andrew Gordon had actual knowledge of these relevant and material references. **Exhibit 21**

93.     On September 17, 2012, the Examiner further cited Solotko, U.S. Publication No. 2008/0103889 as relevant to the prosecution of the '093 Application. **Exhibit 22**

94.     On January 17, 2013, Attorney Caldwell on behalf of Boadin Technology submitted an Information Disclosure Statement, disclosing Shuster et al. U.S. Publication No. 2010/0287368 and Armstrong et al. U.S. Publication No. 2012/0066340 to the Examiner. **Exhibit 50**

95.     On April 29, 2013, the Examiner cited Thakur, U.S. Patent No. 7,895,644, Soroca U.S. Publication No. 2010/0094878, and Weber, U.S. Publication No. 2008/0052372 as relevant to the prosecution of the '093 Application. **Exhibit 23**

96.     The co-pending '068 Application issued as U.S. Patent No. 8,682,961 on March 25, 2014. **Exhibit 24**

97.     Attorney Caldwell, Boadin Technology, and Andrew Gordon did not, at any time during the prosecution of the '068 Application, disclose any of the following references to the Examiner. **Exhibit 25**

- Benson, U.S. 7,913,185

- Kavner, U.S. 6,366,947

- Solotko, U.S. Publication No. 2008/0103889

- Thakur, U.S. Patent No. 7,895,644

- Soroca U.S. Publication No. 2010/0094878

- Weber, U.S. Publication No. 2008/0052372

- Shuster et al. U.S. Publication No. 2010/0287368

- Armstrong et al. U.S. Publication No. 2012/0066340

98.     None of these eight references are listed on the face of U.S. Patent No. 8,682,961.

**<u>Exhibit 24</u>**

99.     The Examiner did not consider any of these eight references in his examination of the '068 Application.

100.     The references not cited in the prosecution of the '068 Application were material to a reasonable examiner in deciding whether to allow the '068 Application because, among other things, they were cited by the Examiner in the prosecution of the '093 Application as pertinent to patentability under 35 U.S.C. § 103 or were previously cited by Applicant during examination of the '093 Application, which has similar specification, subject matter, and claims to the '068 Application.

101.     Boadin Technology, Attorney Caldwell, and Andrew Gordon had knowledge of the withheld references during the prosecution of the '068 Application.

102.     Failure to cite to the USPTO references which Attorney Caldwell and Andrew Gordon were aware, and knew were material, suggests intent to deceive the USPTO.

103.     Further, Attorney Caldwell (USPTO Registration No. 44,580) and Andrew Gordon (USPTO Registration No. 64,517) are each registered patent attorneys and are

particularly familiar with what is required of them under their duty of candor. Failing to disclose references of which they had actual knowledge demonstrates intent to withhold information and deceive the Patent Office. This is the most reasonable inference.

104.    Boadin Technology, Attorney Caldwell, and Andrew Gordon committed inequitable conduct by failing to disclose the known material references to the USPTO during the prosecution of the '068 Application.

105.    Further, these references were not disclosed to the Examiner by the Applicants, Attorney Caldwell, or Andrew Gordon during the prosecution of the U.S. Application No. 14/224,002 (hereinafter the "'002 Application").

106.    U.S. Application No. 14/224,002 was filed by Attorney Caldwell on behalf of Applicant Boadin Technology, LLC on March 24, 2014, as a continuation of the '068 Application, with similar specification, drawings, and claims to the '068 Application and the '093 Application. Copies of the documents initially filed for the '002 Application are attached as **Exhibit 26**.

107.    On November 25, 2014, the '002 Application is assigned from Boadin Technology, LLC to Stragent, LLC (**Exhibit 27**) and from Stragent, LLC to Jenam Tech, LLC. **Exhibit 28** Both assignments are signed by Andrew Gordon as managing member of Boadin Technology, LLC and as EVP of Stragent, LLC. Andrew Gordon is also managing member of Jenam Tech, LLC which has the same address as Stragent, LLC and Aloft Media. The '002 Application was then assigned from Jenam Tech, LLC to Aloft Media on December 02, 2016. **Exhibit 29** On information and belief, Andrew Gordon has been the managing member of Aloft Media at least since December 2, 2016. On information and belief, at all times during the

prosecution of the '002 Application, Andrew Gordon was the managing member of all Applicants.

108.    Boadin Technology, its successors in interest, Attorney Caldwell, and Andrew Gordon did not, at any time during the prosecution of the '002 Application, disclose any of the following references to the Examiner (**Exhibit 30**), nor were these references considered by the Examiner in any parent application to the '002 Application:

- Benson, U.S. 7,913,185

- Kavner, U.S. 6,366,947

- Solotko, U.S. Publication No. 2008/0103889

- Thakur, U.S. Patent No. 7,895,644

- Soroca U.S. Publication No. 2010/0094878

- Weber, U.S. Publication No. 2008/0052372

- Shuster et al. U.S. Publication No. 2010/0287368

- Armstrong et al. U.S. Publication No. 2012/0066340

109.    Of these eight references, only one, Benson U.S. Patent No. 7,913,185, was listed on the face of U.S. Patent No. 10,042,823 which issued from the '002 Application. **Exhibit 31**

110.    Benson was independently located by and cited by the Examiner during prosecution of the '002 Application and was the subject of a rejection of the claims under 35 U.S.C. §§ 102 and 103. **Exhibit 32** The other seven references were not considered by the Examiner for the '002 Application.

111.    Again, the references not cited in the prosecution of the '002 Application were material to a reasonable examiner in deciding whether to allow the '002 Application because, among other things, they were cited by the Examiner in the prosecution of the '093 Application

as pertinent to patentability under 35 U.S.C. § 103 or were previously cited by Applicant during examination of the '093 Application, which has similar specification, subject matter, and claims to the '002 Application.

112. Boadin Technology, its successors in interest, Attorney Caldwell, and Andrew Gordon had knowledge of the withheld references during the prosecution of the '002 Application.

113. Failure to cite to the USPTO references which Attorney Caldwell and Andrew Gordon were aware, and knew were material, suggests intent to deceive the USPTO.

114. Further, Attorney Caldwell and Andrew Gordon are each registered patent attorneys and are particularly familiar with what is required of them under their duty of candor. Failing to disclose references of which they had actual knowledge demonstrates intent to withhold information and deceive the Patent Office. This is the most reasonable inference.

115. Boadin Technology, its successors in interest, Attorney Caldwell, and Andrew Gordon committed inequitable conduct by failing to disclose the known material references to the USPTO during the prosecution of the '002 Application.

116. Further, as discussed below, these references were not disclosed to the Examiner by Aloft Media, Attorney Caldwell, or Andrew Gordon during the prosecution of the subsequent U.S. Application No. 16/056,487 or U.S. Application No. 16/243,044.

117. On October 1, 2017, Attorney Caldwell filed U.S. Application No. 15/721,939 (hereinafter the "'939 Application") on behalf of Defendant Aloft Media as a continuation of the '002 Application. **Exhibit 33** The '939 Application was co-pending with U.S. Application No. 16/056,487 (hereinafter the "'487 Application") which was filed on August 6, 2018 by Attorney Caldwell on behalf of Aloft Media as a continuation of the '002 Application. **Exhibit 34** The

'939 Application and the '487 Application had identical disclosures to the '002 Application, and cover subject matter substantially similar to the '093 Application. As stated above, on information and belief, Andrew Gordon has been the managing member of Aloft Media from at least December 2, 2016 to the present.

118. On December 15, 2017, a Non-Final Rejection was issued to Attorney Caldwell regarding the '939 Application. This Office Action rejected the claims under 35 U.S.C. 103 as being unpatentable over NPL – Microsoft, Lisa Wollin-Creating a JavaScript Drop-Down Menu in FrontPage in view of Buchmiller et. al. U.S. Publication No. 2003/0187706. **Exhibit 35**

119. On December 18, 2017, Attorney Caldwell filed a responsive communication on behalf of Aloft Media specifically acknowledging these two references in writing, indicating Attorney Caldwell and Andrew Gordon had actual knowledge of these relevant and material references. **Exhibit 36**

120. On December 15, 2017 and March 28, 2018, the Examiner further cited Huynh, U.S. Publication No. 2002/0198909 and Cohen U.S. Publication No. 2003/0184582 as relevant to the prosecution of the '939 Application. **Exhibit 37**

121. The co-pending '487 Application issued as U.S. Patent No. 10,691,874 on June 23, 2020. **Exhibit 38**

122. Aloft Media, Attorney Caldwell, and Andrew Gordon did not, at any time during the prosecution of the '487 Application, disclose any of the following references to the Examiner (**Exhibit 39**), nor were these references considered by the Examiner in any parent application to the '487 Application:

- Buchmiller et. al. U.S. Publication No. 2003/0187706

- Kavner, U.S. 6,366,947

- Solotko, U.S. Publication No. 2008/0103889

- Thakur, U.S. Patent No. 7,895,644

- Soroca U.S. Publication No. 2010/0094878

- Weber, U.S. Publication No. 2008/0052372

- Huynh, U.S. Publication No. 2002/0198909

- Cohen U.S. Publication No. 2003/0184582

- Shuster et al. U.S. Publication No. 2010/0287368

- Armstrong et al. U.S. Publication No. 2012/0066340

123.    None of these ten references are listed on the face of U.S. Patent No. 10,691,874 which issued from the '487 Application. **Exhibit 38**

124.    These ten references were not considered by the Examiner for the '487 Application.

125.    Again, the references not cited in the prosecution of the '487 Application were material to a reasonable examiner in deciding whether to allow the '487 Application because, among other things, they were cited by the Examiners in the prosecution of the '093 Application and the '939 Application as pertinent to patentability under 35 U.S.C. § 103 or were previously cited by Applicant during examination of the '093 Application, each of which has identical or similar specification, subject matter, and claims to the '487 Application

126.    Aloft Media, Attorney Caldwell, and Andrew Gordon had knowledge of the withheld references during the prosecution of the '487 Application.

127.    Failure to cite to the USPTO references which Attorney Caldwell and Andrew Gordon were aware, and knew were material, suggests intent to deceive the USPTO.

128. Further, Attorney Caldwell and Andrew Gordon are each registered patent attorneys and are particularly familiar with what is required of them under their duty of candor. Failing to disclose references of which they had actual knowledge demonstrates intent to withhold information and deceive the Patent Office. This is the most reasonable inference.

129. Aloft Media, Attorney Caldwell, and Andrew Gordon committed inequitable conduct by failing to disclose the known material references to the USPTO during the prosecution of the '487 Application.

130. Further, these references were not disclosed to the Examiner by the Aloft Media, Sttorney Caldwell, or Andrew Gordon during the prosecution of the U.S. Application No. 16/243,044.

131. U.S. Application No. 16/243,044 (hereinafter the "'044 Application" or the "Asserted Patent Application") was filed by Attorney Caldwell on behalf of Defendant Aloft Media on January 8, 2019 as a continuation of the '487 Application with identical written description to the '487 Application and the '939 Application and covering substantially similar subject matter as the '093 Application. Copies of the initial filings for the '044 Application are attached as **Exhibit 40**.

132. Aloft Media, Attorney Caldwell, and Andrew Gordon did not, at any time during the prosecution of the '044 Application, disclose any of the following references to the Examiner (**Exhibit 41**) nor were these references considered by the Examiner in any parent application to the '044 Application:

- Buchmiller et. al. U.S. Publication No. 2003/0187706

- Kavner, U.S. 6,366,947

- Solotko, U.S. Publication No. 2008/0103889

- Thakur, U.S. Patent No. 7,895,644

- Soroca U.S. Publication No. 2010/0094878

- Weber, U.S. Publication No. 2008/0052372

- Huynh, U.S. Publication No. 2002/0198909

- Cohen U.S. Publication No. 2003/0184582

- Shuster et al. U.S. Publication No. 2010/0287368

- Armstrong et al. U.S. Publication No. 2012/0066340

133.    None of these ten references are listed on the face of U.S. Patent No. 10,372,793 (the Asserted Patent) which issued from the '044 Application. **Exhibit 1**

134.    These ten references were not considered by the Examiner for the '044 Application.

135.    Again, the references not cited in the prosecution of the '044 Application were material to a reasonable examiner in deciding whether to allow the '044 Application because, among other things, they were cited by the Examiners in the prosecution of the '093 Application and the '939 Application as pertinent to patentability under 35 U.S.C. § 103 or were previously cited by Applicant during examination of the '093 Application, each of which have identical or similar specification, subject matter, and claims to the '044 Application

136.    Aloft Media, Attorney Caldwell, and Andrew Gordon had knowledge of the withheld references during the prosecution of the '044 Application.

137.    Failure to cite to the USPTO references which Attorney Caldwell and Andrew Gordon were aware, and knew were material, suggests intent to deceive the USPTO.

138.    Further, Attorney Caldwell and Andrew Gordon are each registered patent attorneys and are particularly familiar with what is required of them under their duty of candor.

Failing to disclose references of which they had actual knowledge demonstrates intent to withhold information and deceive the Patent Office. This is the most reasonable inference.

139.    Aloft Media, Attorney Caldwell, and Andrew Gordon committed inequitable conduct by failing to disclose the known material references to the USPTO during the prosecution of the '044 Application. The Asserted Patent would not have been issued had such references been disclosed. Consequently, the Asserted Patent is unenforceable.

140.    The aforementioned controversy warrants the issuance of a declaratory judgment of unenforceability due to inequitable conduct. A judicial declaration is necessary and appropriate so that Morse may ascertain its rights and obligations regarding the Asserted Patent.

141.    Morse respectfully seeks a judicial declaration that the Asserted Patent is unenforceable.

### *Materially False Statements to the USPTO*

142.    Patent applicants, inventors, and their attorneys all owe a duty of candor to the USPTO which extends to ensuring that no "new matter" is entered in a patent application other than a continuation-in-part (CIP) application, at the time the CIP is filed. This duty extends throughout the prosecution of a patent application.

143.    Throughout the course of the prosecution which ultimately led to the grant of the Asserted Patent, several affirmative representations were made to the USPTO by Aloft Media, its predecessors in interest, and the prosecuting attorneys involved that the introduction of amended specifications and new drawings added "no new matter" to the first filed '957 Application.

144.    On December 12, 2008, U.S. Application No. 12/334,068 was filed by Attorney Kevin J. Zilka on behalf of Applicant Stragent Technologies, LLC. The '068 Application was filed with a transmittal form indicating that it is a "Continuation" application, not a

"Continuation-in-part" application, of the first filed '957 Application "under 35 U.S.C. 120". **Exhibit 12** The transmittal form is signed by Attorney Kevin J. Zilka. Accordingly, Applicant and Attorney Zilka certified to the USPTO that the disclosure of the '068 Application contained no new matter and that the disclosure of the '068 Application was the same as that of the first filed '957 Application.

145. As discussed above, the entirety of the '068 Application is unsupported by the '957 Application and constitutes new matter. This new matter was submitted to the USPTO by Attorney Zilka on behalf of Applicant. Zilka and Applicant violated their duty of candor via this submission.

146. On April 13, 2009, the Applicant filed replacement drawings for the '068 Application. In this filing, Attorney Christopher M. Edgeworth stated: "No new matter is added by the replacement drawing sheets". **Exhibit 42** This is again a false certification that the '068 Application is fully supported by the '957 Application in violation of Attorney Edgeworth and Applicant's duty of candor.

147. The USPTO issued a final rejection of the '068 Application on June 10, 2011, rejecting all claims. Notably, the Examiner included a document titled "Examiner's search strategy and results" which shows in detail how the Examiner searched the prior art based on the claims in the patent. **Exhibit 43** This demonstrates that the Examiner relied on the patent Applicant's and its attorneys' representations to the Office that the application is a "continuation of" the '957 Application with a priority date of March 20, 2006.

148. However, considering that the '068 Application is a photocopy of the '140 Provisional Application, has nothing in common with the '957 disclosure and cannot trace priority to the '140 Provisional Application nor could it incorporate by reference the '140

28

Application, the date searched by the Examiner should have been no earlier than December 12, 2008, the filing date of the '068 Application.

149.    On October 11, 2011, a replacement written specification and replacement drawing sheets for the '068 Application was filed by Attorney Patrick E. Caldwell on behalf of Applicant. **Exhibit 44** Notably, this amendment adds the first reference to the '140 Provisional Application. The amended Related Applications section states: "The present application is a continuation of U.S. Application Ser. No. 11/384,957 filed Mar. 20, 2006, now issued under U.S. Patent No.: 7,529,795, which is incorporated herein by reference and which, in turn, incorporates by reference U.S. Provisional Application Ser. No. 60/784,141 filed Mar. 20, 2006 and U.S. Provisional Application Ser. No. 60/784,140 filed Mar. 20, 2006, both of which are incorporated herein by reference".

150.    As originally filed, this section read: "The present application is a continuation of U.S. application serial number 11/384,957 filed 03/20/2006, which is incorporated herein by reference. The present application is also related to U.S. provisional application serial number 60/784,141 filed 03/20/2006, which is incorporated herein by reference".

151.    As described above, the '957 Application cannot and does not incorporate the '140 Provisional Application by reference. Additionally, the '140 Provisional Application cannot be incorporated by reference into the '068 Application.

152.    The October 11, 2011, amendment additionally added at least 70 new paragraphs of text and six new drawing figures to the '068 Application.

153.    This amendment was submitted with a statement signed by Attorney Caldwell on behalf of the Applicant which read: "I hereby state that the accompanying substitute specification contains no new matter over that contained in the above-identified application originally filed."

154.    The USPTO relied on the statement by Attorney Caldwell in examining the '068 Application and took the sworn statement as proof that the substitute specification included no new matter.

155.    For all the reasons above, Attorney Caldwell's statement was objectively false. The only material that is not impermissible "new matter" is the matter disclosed by the first filed '957 Application. Thus, while the '068 Application as filed contained nearly 100% new matter as against the first filed '957 Application, the amendments to the application on October 11, 2011, only added still more new matter.

156.    On August 8, 2013, the USPTO issued a Notice of Allowance and supplied another document titled "Examiner's search strategy and results". **Exhibit 45** Once again, relying on the statements made by the Applicants and prosecuting attorneys, the USPTO used the March 20, 2006, filing date of the first filed '957 Application as the date for the prior art search.

157.    Before the '068 Application issued as U.S. Patent No. 8,682,961 with the new matter on March 25, 2014, Attorney Caldwell filed U.S. Application No. 14/224,002 (hereinafter the "'002 Application") on behalf of Boadin Technology on March 24, 2014, as a "continuation" application tracing priority to the '068 Application. **Exhibit 26**

158.    In preparing and filing the '002 Application, Attorney Caldwell and Applicant simply re-filed the substitute disclosure of the '068 Application. As discussed above, the '068 Application completely lacked support from the first filed '957 Application. Thus, the '002 Application also completely lacks support from the first filed '957 Application. Regardless, Attorney Caldwell and Applicant claimed priority to the first filed '957 Application.

159.    Again, the USPTO relied on the claimed priority date of March 20, 2006, as the basis for its prior art searches. **Exhibit 46**

30

160.    On November 13, 2017, Attorney Caldwell and Applicant filed a "Substitute Statement in Lieu of an Oath or Declaration." This substitute statement was filed in the name of Aloft Media, LLC which was indicated as "assignee" and signed by Andrew Gordon, having a title of "Manager". **Exhibit 47**

161.    The substitute statement indicated that the "Inventor cannot be found or reached after diligent effort."

162.    Nothing in the file wrapper indicates what steps were taken to locate the inventor during the course of the prosecution of the '002 Application.

163.    Neither the Applicants, nor Gordon, nor Caldwell have ever explained to the USPTO or to the public why inventor Arav could not be located over the course of four years (or the four years that followed with subsequent applications).

164.    The substitute specification includes a different residence than was reported by the inventor in the '957 Application, indicating that the Applicants and Attorney Caldwell were aware that the inventor had relocated to HaMachtarot Street 6A, #4 Raanana, Israel 43550. It's unclear from the record why this address was used to contact Arav.

165.    On August 6, 2018, during the pendency of the '002 Application, Attorney Caldwell filed U.S. Application 16/056,487 (hereinafter the "'487 Application") on behalf of Aloft Media as a continuation of the '002 Application. **Exhibit 34**

166.    In preparing and filing the '487 Application, Attorney Caldwell and Aloft Media again re-filed the substituted disclosure of the '068 Application. As discussed above, the '068 Application completely lacked support from the first filed '957 Application. Thus, the '487 Application also completely lacks support from the first filed '957 Application. Regardless, Attorney Caldwell and Aloft Media claimed priority to the first filed '957 Application.

167. Again, the Examiner relied on the claimed priority date of March 20, 2006, as the basis for its prior art searches. **Exhibit 48**

168. On January 8, 2019, during the pendency of the '487 Application, Attorney Caldwell filed U.S. Application 16/243,044 (hereinafter the "'044 Application") on behalf of Aloft Media as a continuation of the '487 Application, claiming priority to the '957 Application. **Exhibit 40**

169. In preparing and filing the '044 Application, Attorney Caldwell and Aloft Media again re-filed the substituted disclosure of the '068 Application. As discussed above, the '068 Application completely lacked support from the first filed '957 Application. Thus, the '044 Application also completely lacks support from the first filed '957 Application. Regardless, Attorney Caldwell and Aloft Media claimed priority to the first filed '957 Application.

170. Again, the Examiner relied on the claimed priority date of March 20, 2006, as the basis for its prior art searches. **Exhibit 49**

171. Additionally, in each of the '068 Application, the '002 Application, the '487 Application, and the '044 Application, the Applicants and prosecuting attorneys make representations to the USPTO that the Applicant is the owner of the invention represented in these Applications.

172. The '140 Provisional Application on which each of these Applications is directly based was never assigned from Instantbull, LLC to any Applicant. As discussed above, the '957 Application which was assigned to the Applicants contains no disclosure which supports the invention claimed by the Applicants in the '068 Application, the '002 Application, the '487 Application, or the '044 Application. Any claims of ownership of the invention disclosed in the '140 Provisional Application are materially false.

173.     Based on the above, unmistakably and materially false representations were made by the Applicants and prosecuting attorneys with the specific intent of deceiving the Patent Office.

174.     "Because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence." *Therasense v. Becton, Dickinson, & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011).

175.     The prosecuting attorneys and Applicants knew that the new matter was not in the original disclosure.

176.     The prosecuting attorneys and Applicants were highly motivated via personal financial gain to secure the patent claims and to exclude others from practicing the claimed invention.

177.     The prosecuting attorneys' and Applicant's actions in this case demonstrate a calculated course of action to deceive the Patent Office through introduction of new matter into an application and to misrepresent the added material as not containing any new matter in order to obtain an earlier priority date.

178.     The March 20, 2006, priority date of the '957 application is particularly material in light of the Instantbull Website, which was active July 2006. The December 12, 2008, filing date of the '068 Application would render the '068 Application and all subsequent continuations invalid under 35 U.S.C. § 102.

179.     Further, the Applicants benefit from the subject matter introduced in the '068 Application continuing from the '957 Application because the Applicants did not have ownership of the invention claimed in the '068 Application. Instantbull, LLC assigned rights in the '957 Application to Stragent Technologies, LLC, but Instantbull, LLC never assigned its '140

33

Provisional Application to any other party. Thus, the Applicants could not claim the subject matter in the '068 Application and all subsequent continuations unless it could be considered a proper continuation of the matter in the first filed '957 Application which was assigned to them.

180.    All parties involved in the prosecution of the patent family had a duty to comply with 35 U.S.C. § 132 (MPEP 2422.07) to ensure that new matter was not added. Their materially false statements in light of that duty, evidences that Aloft Media, its predecessors in interest, and the prosecuting attorneys made those statements with the intent to deceive the Patent Office. This is the most reasonable inference.

181.    The misrepresentations were made by Aloft Media, its predecessors in interest, and the prosecuting attorneys with the specific intent to deceive the USPTO, which would not have issued the Asserted Patent absent the misrepresentation.

182.    These affirmative misrepresentations not only benefited Aloft Media, but also negatively impacted the entities which license Aloft Media's patents. These affirmative misrepresentations thus negatively impacted the entire public at large and worked to erode confidence in the United States Patent Act.

183.    The aforementioned controversy warrants the issuance of a declaratory judgment of unenforceability due to inequitable conduct. A judicial declaration is necessary and appropriate so that Morse may ascertain its rights and obligations regarding the Asserted Patent.

184.    Morse respectfully seeks a judicial declaration that the Asserted Patent is unenforceable.

## COUNT IV – DECLARATION OF UNENFORCEABILITY OF U.S. PATENT NO. 10,372,793 DUE TO PROSECUTION LACHES

185.    Morse restates and incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

34

186. As described above, there was an unreasonable and unexplained delay in prosecuting the Asserted Patent.

187. Additionally, the overwhelming amount of prior art cited to the examiner demonstrates an intent to overwhelm and inundate the Patent Office.

188. Morse and others have been prejudiced by this unreasonable and unexplained delay.

189. The aforementioned controversy warrants the issuance of a declaratory judgment of unenforceability due to prosecution laches. A judicial declaration is necessary and appropriate so that Morse may ascertain its rights and obligations regarding the Asserted Patent.

190. Morse respectfully seeks a judicial declaration that the Asserted Patent is unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, THE MORSE GROUP, INC., respectfully requests the following relief:

A. A declaration that Morse has not infringed and does not infringe, directly or indirectly, any valid and enforceable claim of U.S. Patent No. 10,372,793, whether literally or under the doctrine of equivalents;

B. A declaration that each claim of U.S. Patent No. 10,372,793 is invalid as a matter of law;

C. A declaration that U.S. Patent No. 10,372,793 is unenforceable against Morse under the doctrine of inequitable conduct and/or prosecution laches;

D.     An order declaring that this is an exceptional case and awarding Morse its costs, expenses, disbursements, and reasonable attorneys' fees under 35 U.S.C. § 285 and 28 U.S.C. § 1927; and

E.     All such other and further relief, both at law and in equity, which the Court deems just and proper.

THE MORSE GROUP, INC., Defendant

BY:     HOLMSTROMKENNEDYPC

BY:     /s/ Alexander J. Mezny
        One of its Attorneys


ALEXANDER J. MEZNY (#6209513)
HOLMSTROMKENNEDYPC
800 North Church Street
Rockford, IL 61103
(815) 962-7071
ajm@hkrockford.com
4936-1830-2259, v. 5

36